IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DAMIEN DERRELL LINDSEY**                                                **PLAINTIFF**

**v.**                                                  **CAUSE NO. 1:15CV357-LG-RHW**

**EVAN HUBBARD, ET AL.**                                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING
JOINT MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the [36] Joint Motion for Summary Judgment filed by all Defendants seeking dismissal of Plaintiff's claims. The plaintiff, who is proceeding pro se and in forma pauperis in this prison litigation, has not responded to the Motion. After due consideration of Plaintiff's allegations and the evidence provided by the defendants, it is the Court's opinion that the defendants have shown there is no question of material fact for the jury. Accordingly, the Motion will be granted and Plaintiff's claims dismissed.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff Lindsey's complaint concerns actions taken by officials at the Harrison County Adult Detention Center in September 2015. Lindsey alleges he was booked in to the HCADC for public intoxication at 4:00 a.m. on September 8, 2015, and should have been released eight hours later. (Compl. Attach. at 7, ECF No. 1). However, he was not released because detectives had asked that he be held as long as possible. (*Id.*). Also, he was informed that his "bondman's off my bond" more than eight hours after he had been booked in. (*Id.* at 9).

Lindsey alleges he was frustrated by being held longer than he thought

permissible and wanted to speak to a supervisor. This was the reason he did not respond to Officer Harmon's request for his name during the head count procedure on the afternoon of September 8. He instead went back into his cell for his identification band to show to Officer Harmon. Lindsey's action prompted Officer Harmon to close the cell door, but Lindsey managed to slip through it before it closed. (*Id.* at 8-9). After the altercation that ensued, Lindsey was charged with assaulting an officer. Lindsey alleges the Warden found him guilty of the assault on insufficient evidence and because of Lindsey's race and nationality.[1] According to Lindsey,

> so as I [barely] made it [through] the closing door, Officer Harmon then grab me around the collar of my jumpsuit, and started trying to take me down. I then just held my weight, and refuse to fall, never placing a hand on the officer in an assaultful way, again, [surveillance] camera is in my favor. Officer Harmon #331 then started shouting that I assaulted him, and now Officer Harmon wishes to call supervisor, a woman name Officer Walters place me into handcuffs, and [escorted] me into a lock down cell.
>
> Befor[e] the situation got out of hand, the first two times I was ask[ed] to go to my cell, [surveillance] will show that I wasn't aggressive, and when Ms. Walters place me into handcuffs, I wasn't aggressive, but all of a sudden I became aggressive and assaulted Officer Harmon #331, when the truth of the matter is, Officer Harmon #331, was the [true] aggressor, and was the one who committed the assault, that why the administration tampered with the [beginning] of the [surveillance] tape, saying there wasn't a clear sight. Because the beginning of that tape proved my innocence.

---

[1] The race and nationality allegation is merely a bald assertion. Lindsey has not alleged any facts in support, and there is no evidence in the record indicating that race or nationality played a role in the events at issue here. Accordingly, the Court finds the claim has been abandoned and should be dismissed.

(Compl. Attach. at 8-9, ECF No. 1).

Lindsey also alleges irregularities in the disciplinary process, in that (1) he did not receive the Rule Violation Report within 24 hours of the assault, (2) his disciplinary hearing was held eight, rather than seven days, after he received the RVR, and (3) the RVR stated that camera evidence supported the RVR, when in reality the surveillance video showed no signs of an assault.

After he was found guilty of assaulting an officer, Lindsey was confined in conditions he alleges were "pure torture," as he was allowed only one phone call in the month of September 2015, very few showers, the cell lights were never turned off, water would be turned off as punishment, and inmates' constant "beating and banging" did not allow him to sleep. (Compl. Attach. at 3, ECF No. 1). He is "seeking remedy on the grounds of slander, false pretense, and deprivation of one's life and liberty." (Compl. Attach. at 2, ECF No. 1). Additionally, Lindsey alleges that officials retaliated against him by refusing to promptly repair and return his eyeglasses, which were broken during the altercation.

Lindsey supplemented his complaint (ECF No. 13) and testified at an omnibus hearing conducted by the Magistrate Judge. (ECF No. 35). Lindsey's testimony at the hearing clarified certain allegations. He stated he was formally indicted for misdemeanor assault for the incident, and therefore jail officials decided they would not act on the RVR. (Omnibus Tr. 23-24, ECF No. 35). Nevertheless, he was punished as if he had been found guilty of the RVR allegations. (*Id*. at 24). He stated that he sued Warden Hubbard and Harrison County because Hubbard did

not respond to his request to "look into the situation," but instead allowed Lindsey to be charged with assault on a correctional officer. (*Id*. at 28, 30). Further, he was not moved from officer assault risk classification level even after two months of excellent behavior. (*Id*. at 31-32). Lindsey sued Officer Immel for bringing the assault charge, which Lindsey alleges was recklessly and dishonestly prepared and resulted in false prosecution and false imprisonment. (*Id*. at 28-29). He sued Officer Walters for taking his eyeglasses from him, "and also because of her frivolous statements" about the assault. (*Id*. at 29-30). Lindsey sued Officer Victoriano, the booking supervisor, for keeping him imprisoned beyond his eight-hour release time. (*Id*. at 30). He sued Officer Alford, head of classification, for housing him with violent offenders, which put him in fear for his safety. (*Id*. at 30-31). The defendants have moved for dismissal of all of these claims.

## II. THE LEGAL STANDARD

Summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual controversies are resolved in favor of the nonmoving party, but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Lindsey has not submitted any argument or evidence in opposition to the defendants' motion.

Nevertheless, the defendants have the burden of establishing the absence of a genuine issue of material fact and, unless they have done so, the Court may not grant the motion, regardless of whether any response was filed. *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

### III. DISCUSSION

This case is brought under 42 U.S.C. § 1983, which requires Lindsey to show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). There is no question that the named defendants were acting under color of state law when the events at issue took place.

1. Arrest and Detention

Lindsey's complaints concerning his arrest and detention stem from his belief that it was impermissible for the HCADC to detain him for fifteen minutes beyond an eight hour limitation on a charge of public intoxication. The Court finds no support for Lindsey's position that he had to be released after eight hours. Under the Fourth and Fourteenth Amendments, a reasonable period of detention before a detainee must be brought before a judicial officer is permissible. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). "The probable-cause determination 'must be made by a judicial officer either before or promptly after arrest.'" *Id*. at 143 (citing

*Gerstein v. Pugh*, 95 S. Ct. 854, 869 (1975)). Generally, an initial appearance within 48 hours will satisfy the promptness requirement. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Similarly, Mississippi law holds that "arrested persons must be afforded an initial appearance both (1) within 48 hours, and (2) without unnecessary delay." *Swinney v. State*, 829 So. 2d 1225, 1231 (Miss. 2002). Lindsey does not contend that he was denied prompt presentation to a judicial officer, and in fact the record shows he appeared in court the next day on the charge. On September 9, Lindsey pled guilty to and was sentenced to time served for "public drunk" in the Gulfport Municipal Court.[2] (Defs. Mot. Ex. B1 (pt. 2), at 11, ECF No. 36-3). Accordingly, Lindsey's detention did not violate his constitutional rights, and there is no factual or legal merit to his claim that Officer Victoriano, the booking supervisor, kept him imprisoned beyond his release time.

Furthermore, the uncontested evidence provided by the defendants shows there is more to the story of Lindsey's arrest and detention than his allegations suggest. Lindsey was free on a bond provided by Aw Shucks Bail Bonds when he was arrested for public intoxication on September 8. Upon his arrest, he was brought to the Gulfport police station, where detectives asked him questions about a burglary they suspected he had committed.[3] (Omnibus Tr. 57-58, ECF No. 35). He

---

[2] The offense carries a penalty of a $100 fine, thirty days imprisonment, or both. Miss. Code Ann. § 97-29-47.

[3] Lindsey testified that he was brought to the police station for questioning about a burglary he had committed earlier, "and once I made it to the station, you know, I refused to give an interview or make any statements. So that's when they

refused to answer, and was brought to the HCADC to be booked in on the public intoxication charge at approximately 4:00 am. At 9:20 that same morning, Aw Shucks submitted a "Surrender Notice" to the Harrison County Sheriff's Office, surrendering Lindsey to the Sheriff because he was "non-compliant, back in Harrison County on new charges." (Defs. Mot. Ex. B1 (pt. 2), at 16, ECF No. 36-3). Thus, five hours after he was booked in on the public intoxication charge, Lindsey was detained by virtue of the surrender. The next day, Lindsey was charged with burglary of a vehicle committed on September 2. (Defs. Mot. Ex. B1 (pt. 1), at 13-14, ECF No. 36-2). He was charged as a habitual criminal, having been convicted of four previous felonies. (*Id.* at 23-24).

    2. The Assault RVR

Lindsey alleges that Officer Harmon assaulted him; he did not assault Officer Harmon. He asserts that Warden Hubbard refused to fairly weigh the evidence when he considered the RVR, and that Investigator Immel, Officer Harmon and Officer Walters were not truthful in recounting the event. As a result, Lindsey was deemed an officer assault risk and moved into a more restricted classification. He also alleges that the HCADC did not comply with its policy in presenting the RVR to him or scheduling the hearing, as both were delayed by a matter of days.

Lindsey's claims regarding his RVR do not rise to the level of a constitutional

---

then decided that, you know, to charge me for public intoxication. And detectives reported to officers to report to the Harrison County Adult Detention Center to hold me as long as possible because I was under investigation." (Omnibus Tr. 16-17, ECF No. 35).

violation. The HCADC's failure to follow its RVR timing policies does not implicate Lindsey's constitutional rights, as there is no allegation that HCADC did not provide the "constitutional minima." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). The due process that an inmate must receive in a disciplinary hearing is: (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken, and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

Contrary to his allegations, the evidence shows that Lindsey received at least twenty-four hours written notice of the charge, waived a hearing, and accepted a plea to be found guilty. (Defs. Mot. Ex. B1 (pt. 2), at 1, ECF No. 36-3). The written finding of the board was that "[Lindsey] was charged w/ simple assault by Inv. Immel on 9-11-15. Based on the charge, I found it not necessary to penalize him further. He has been reclassed as an officer assault risk." (*Id.*). If Lindsey had objections to the video and testimonial evidence, he should have exercised his right to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 566. His decision to waive that opportunity and plead guilty does not violate his right to due process.

At most, Lindsey suffered a reclassification as a result of defendants' belief

that he had assaulted a prison official. Pursuant to *Sandin v. Conner*, liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 472, 483-484 (1995). Reclassification does not rise to the level of a constitutional violation. "Under *Wilson v. Budney*, 976 F.2d 957 (5th Cir. 1992), a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Because Lindsey relies on a "legally nonexistent interest, any alleged due process or other constitutional violation arising from his classification is indisputably meritless." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). The Court concludes that the defendants have shown they are entitled to summary judgment in regard to the claims concerning the assault RVR and Lindsey's classification.

3. Excessive Force

As a pretrial detainee at the time of the incident at issue, Lindsey's excessive force claim is properly considered under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id*. (citing *Ingraham v. Wright,* 430 U.S. 651, 671-72, n.40 (1977); *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989)). Lindsey is required to show

that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley*, 135 S. Ct. at 2473. To determine the reasonableness of the force used, the Court is to consider the following non-exclusive list of factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant and (6) whether the plaintiff was activity resisting. *Id.*

Lindsey testified at the omnibus hearing that during a head count procedure, he did not comply with Officer Harmon's order to give his name. (Omnibus Tr. 20, ECF No. 35). Instead, he turned back into his cell to get his identification band. When he noticed the cell door closing, he slipped back through it. (*Id.*). Officer Harmon grabbed Lindsey by the jumpsuit and "it was like he was trying to restrain me or take me to the floor or something of that nature." (*Id.* at 20-21). Lindsey agreed that he was not compliant "but I had a good reason to be not compliant." (*Id.* at 21). One of Lindsey's eyeglass lenses broke during the incident. (*Id.* at 22).

Lindsey's testimony demonstrates that the force used against him was reasonable. He was merely restrained, and in a way that produced no injury; he was resisting restraint; and Officer Harmon could reasonably perceive a threat from Lindsey's action of slipping through the cell door after Harmon had ordered it closed. The excessive force claim is without merit and will be dismissed.

4. The Conditions of Confinement

Lindsey complains that he was improperly housed with violent offenders, the lights remained on all times while he was housed in the maximum security area, he was allowed only one telephone call and "very few" showers in three months at the HCADC.[4] Lindsey's challenge to the constitutionality of his conditions of confinement is determined by application of the test in *Bell v. Wolfish*, 99 S. Ct. 1861 (1979). The test asks "whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Id.* at 1873. In determining whether a particular condition amounts to punishment, the court considers whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Harris v. Angelina Cty.*, 31 F.3d 331, 334 (5th Cir. 1994) (quoting *Bell*, 99 S. Ct. at 1873). Courts may infer a punitive purpose if the challenged condition is not "reasonably related to a legitimate governmental objective." *Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir. 1996) (quoting *Bell*, 99 S. Ct. at 1874). Even if evidence of a punitive purpose is established, however, there exists "a de minimis level of imposition with which the Constitution is not concerned. " *Id.* at 106 (quoting *Bell*, 99 S. Ct. at 1874 n.21).

      a) Maximum Security Housing

---

[4] The remainder of the allegations concerning conditions of Lindsey's confinement are not developed in the complaint or hearing testimony. Accordingly, they have been abandoned and will be dismissed.

Lindsey was housed in a segregation unit with other violent offenders because he was classified as "maximum security" after assaulting Officer Harmon, (Def. Mot. Ex. G 2, ECF No. 36-10), and because of certain medical concerns. (Defs. Mot. Ex. filed under seal, ECF No. 40). According to Warden Hubbard,

> In the high level security areas of the HCADC that require activity watch and suicide watch [such as the segregation unit Lindsey was housed in], it is the policy of the HCADC to leave the lights on in the day rooms as well as in the cells, 24 hours a day, seven days a week, so that the officers assigned to those areas have a clear view of the inmates housed in those Blocks at all times to ensure the security and safety of inmates housed in those areas as well as officer safety.

(Defs. Mot. Ex. B 4, ECF No. 36-2).

This uncontroverted evidence establishes that HCADC's policy of constant illumination in the maximum security housing units is not for a punitive purpose, but serves a legitimate penological interest of officer and inmate safety. *See, e.g., Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004). Furthermore, Lindsey does not allege, nor is there any evidence, that HDADC officials were aware of a specific risk of serious danger to him from other inmates in the maximum security housing unit and they failed to intervene. *See Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).

### b) Telephone Use

In regard to Lindsey's testimony that he was allowed only one phone call for the three month period he was incarcerated at the HCADC, the Fifth Circuit has held that prisoners have "no right to unlimited telephone use." *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). A prisoner's right to telephone access is subject to

rational limitations in the face of legitimate security interests of a penal institution. *Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir. 2012) (citing *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) and *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989)). Prison and jail officials are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Waganfeald*, 674 F.3d at 485 (jailer was not obligated to allow pretrial detainees to use cell phones when land lines were disrupted by a hurricane for several days).

Even if allowing one telephone call in three months is not a valid exercise of HCADC officials' discretion, Lindsey's allegation is factually inaccurate. The defendants' evidence shows that Lindsey made seven phone calls from September 9, 2015 through November 17, 2015. (Def. Mot. Ex. B1 (pt. 2), at 21-22, ECF No. 36-3).

      c) Showers

Lindsey testified that he was only allowed the opportunity to shower three times a week. (Omnibus Tr. 26, ECF No. 35). Although deprivation of the basic elements of hygiene can violate the Eighth Amendment, Lindsey's allegation is not sufficient to state a viable Eighth Amendment claim, as "'some measure of hygiene [was] provided.'" *Ruiz v. LeBlanc*, 643 F. App'x 358, 361-62 (5th Cir. 2016) (quoting *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983)).

The Court finds no question of material fact for the jury in regard to any of

Lindsey's conditions of confinement claims. The defendants are entitled to summary judgment.

5. Retaliation

Lindsey alleges that Officer Walters refused to return his broken eyeglasses. (Compl. Attach. at 15, ECF No. 1). He appears to allege that Officer Walters' refusal was retaliation for his assault on Officer Harmon, because when he told her he could not see without them she replied "good" and walked away. (*Id.*). To state a claim for retaliation under § 1983, a plaintiff must allege (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). In order to prove causation, a plaintiff must show that "but for the retaliatory motive the complained of incident would not have occurred." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and alteration omitted). A plaintiff cannot support a claim of retaliation merely by his personal belief that he is a victim, *Jones*, 188 F.3d at 325, and a conclusory allegation of retaliation is insufficient to state a claim. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). The Fifth Circuit requires retaliation claims to be viewed with skepticism. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Lindsey's retaliation claim fails, as there is no constitutional right at stake. Lindsey has no constitutional right to have his eyeglasses promptly fixed, *see*

*Parrott v. St. Tammany Parish Jail Med. Dep't*, No. CIV. A. 13-5207, 2014 WL 582810, at *6 (E.D. La. Feb. 13, 2014), and they had been replaced by the time of the omnibus hearing. (Omnibus Tr. 22, ECF No. 35). More importantly, Lindsey's claim is that Walters' retaliation was for his assault on Officer Harmon, not for Lindsey's exercise of a constitutional right. Accordingly, the Court finds the defendants are entitled to summary judgment in regard to the retaliation claim.

    6. Slander

Lindsey alleges that the officers who gave statements about his assault on Officer Harmon slandered him, causing enormous damage to his reputation. (*See* Compl. Attach. 15, ECF No. 1). He phrases this claim as slander, false pretenses, and/or frivolous testimony. However, slander-related claims are not cognizable under 42 U.S.C. § 1983 because a defamation claim does not involve the deprivation of any rights, privileges or immunities which are secured by the Constitution or laws of the United States. *See Mowbray v. Cameron Cty.*, 274 F.3d 269, 277 (5th Cir. 2001) (allegations of slander by a former prisoner, resulting in public humiliation, scorn, and ridicule, do not state a claim under § 1983); *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980); *Castillo v. Bowles*, 687 F. Supp. 277, 282 (N.D. Tex. 1988) (dismissing inmate's defamation claim against jail guards because, even if his allegations were true, plaintiff only alleged harm to his reputation, a claim not protected by the Constitution). Thus, Lindsey's slander-related claims fail to state a constitutional violation. To the extent Lindsey's complaint may be interpreted as asserting state law claims, the Court declines to exercise

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [36] Joint Motion for Summary Judgment filed by all Defendants is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 23rd day of June, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE